**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

STEVEN DOUGLAS DARE,
          *Defendant-Appellant.*

No. 04-30202

D.C. No.
CR-03-00020-DWM

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, Chief District Judge, Presiding

Argued and Submitted
February 9, 2005—Seattle, Washington

Filed September 23, 2005

Before: Diarmuid F. O'Scannlain, Edward Leavy, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Leavy;
Dissent by Judge Bea

**COUNSEL**

Michael Donahoe, Federal Defenders of Montana, Helena, Montana, for the defendant-appellant.

Paulette L. Stewart, United States Attorney's Office, Helena, Montana, for the plaintiff-appellee.

**OPINION**

LEAVY, Circuit Judge:

Stephen Douglas Dare appeals his statutory mandatory minimum ten-year sentence imposed pursuant to 18 U.S.C. § 924(c) for discharging a firearm during the course of a drug trafficking crime. He contends that he was sentenced in violation of the Sixth Amendment and that the district court erred in using a preponderance of the evidence standard when it found that he discharged a firearm. We hold that Dare's mandatory minimum sentence imposed through judicial factfinding utilizing a preponderance of the evidence standard does not violate the Sixth Amendment, pursuant to *Harris v. United States*, 536 U.S. 545 (2002). We affirm the judgment.

**BACKGROUND**

On April 23, 2003, Steven Dare met several coworkers at a local bar and he drank alcohol for several hours. He stated that he was "pretty well trashed." His younger friend Casey arrived in the bar with a person that Dare did not know. Casey

explained that this person wanted to buy some marijuana. Unbeknownst to both Dare and Casey, the buyer was a drug informant working for the Montana drug task force.

The trio of Dare, Casey, and the informant drove to Dare's home. Dare sold the informant a bag of marijuana for $200. Dare then asked if they would like to smoke some marijuana with him, but they declined. Dare then went into the next room and brought back his loaded shotgun. Dare stated that he "didn't want any badges coming back at me for selling drugs." Dare handed the shotgun to his friend Casey and asked him if he wanted to shoot it outside. Casey had been at Dare's home and had discharged the shotgun with him in the past, but, on this occasion, Casey declined to shoot the shotgun. Dare then took the shotgun to his front door, opened the door, and discharged the shotgun in the air, aiming over his wood pile.

A federal grand jury filed a four-count indictment. Counts II and III, to which Dare later plead guilty, alleged:

> Count II: [That Dare] . . . in furtherance of a drug trafficking crime, to-wit: possession with intent to distribute and distribution of marijuana in violation of 21 U.S.C. § 841(a)(1), did possess a firearm, to-wit: a Winchester 12-gauge pump shotgun, Defender Model, serial number L2146716, in violation of 18 U.S.C. § 924(c);

> Count III: [That Dare] . . . did knowingly, intentionally, and unlawfully, possess with intent to distribute and distribute controlled substances, to-wit: 12 grams or more of a mixture of substances containing marijuana, in violation of 21 U.S.C. § 841(1)(a).

The statute under which Dare was indicted on Count II, 18 U.S.C. § 924(c), provides in relevant part:

(c)(1)(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime —

> (i) be sentenced to a term of imprisonment of not less than 5 years;
>
> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
>
> (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

(c)(1)(B) If the firearm possessed by a person convicted of a violation of this subsection —

> (i) is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon, the person shall be sentenced to a term of imprisonment of not less than 10 years; or
>
> (ii) is a machinegun or a destructive device, or is equipped with a firearm silencer or firearm muffler, the person shall be sentenced to a term of imprisonment of not less than 30 years.

(c)(1)(C)  In the case of a second or subsequent con-
viction under this subsection, the person shall —

    (i)  be sentenced to at term of imprisonment
of not less than 25 years; and

    (ii)  if the firearm involved is a machinegun
or a destructive device, or is equipped with
a firearm silencer or firearm muffler, be
sentenced to imprisonment for life.

18 U.S.C. § 924(c)(1)(A)-(C) (2004).

Neither "brandish[ing]" nor "discharg[ing]" the firearm, 18
U.S.C. § 924(c)(1)(A)(ii), (iii), was alleged in the indictment.

Dare entered a plea of not guilty at his arraignment. He
later stated that he had no recollection of discharging the shot-
gun until he was informed of that fact when the magistrate
judge read the indictment to Dare from the bench.

Dare moved to change his plea from not guilty to guilty. In
his motion he stated:

> [T]he parties have only recently recognized that
> under *Harris v. United States*, 122 S. Ct. 2406
> (2002) , the court determines whether a sentence
> under 18 U.S.C. § 924(c) [Count II] should be
> enhanced for brandishing or discharging a firearm.
> . . . [D]efendant admits he possessed the shotgun
> during the drug crime but disputes that he either
> brandished or discharged it, which are issues for this
> Court at the time of sentencing under *Harris*, *supra.*

Dare acknowledged in his plea hearing that he knowingly
possessed the shotgun in furtherance of the crime of posses-
sion with intent to distribute marijuana. Dare stated, when

questioned by the district court, that the maximum penalty he faced under the § 924(c) charge was life imprisonment.

Dare was sentenced on April 30, 2004. Dare argued that for the government to establish that he had brandished or discharged the shotgun in relation to the drug transaction, the government had to satisfy a standard of proof beyond a reasonable doubt, or, at a minimum, a clear and convincing standard of proof. His lawyer called several witnesses, including Dare and his two adult sons, to testify about Dare's level of intoxication and the details regarding his use of the shotgun. Dare testified that he was highly intoxicated and that the shotgun was discharged after the drug transaction had been completed.

Regarding the sentence under § 924(c), the district court judge stated that he "had no discretion here," and further stated:

> I find it outrageous, just like his sons do, that this man, for 12 grams of marijuana, is going to spend ten years of his life in a federal prison of the United States. And at the very most, I could say, well, seven years is the best deal, and that borders on outrageous. But that's what the law is.
>
>     . . . .
>
> You have a man who's lived in a community for 25 years, who is recognized as hard working, honest, reliable, who would give the shirt off of his back to anybody, who has given two sons to this country to defend this country, and we're going to lock him up for ten years and that's not outrageous? I think it is. So I will be a part of the outrage. Unwillingly. But I'm going to do it.

The district court found that the government established by a preponderance of the evidence that the shotgun "was dis-

charged in conjunction with the drug transaction." The court also concluded, however, that "if the burden of proof is clear and convincing," the government's proof failed. The court noted that Dare was clearly intoxicated and was unaware that he used the gun until he was advised of that fact at his arraignment. The court found there was no clear and convincing evidence (1) that Dare had intent to intimidate or threaten the two young men with the shotgun; (2) that the two men were threatened by the discharge of the shotgun; or (3) that Dare intended the discharge of the shotgun to be a part of the drug transaction.

The district court sentenced Dare to a mandatory minimum of ten years under 18 U.S.C. § 924(c)(1)(A)(iii) for discharging a gun in conjunction with a drug transaction. The district court sentenced Dare to zero months imprisonment for the possession of marijuana.[1]

Dare filed a Notice of Appeal on May 6, 2004. In his brief, Dare argued that the district court should have employed a higher standard of proof at sentencing and that his sentence violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004). *Blakely* was decided by the Supreme Court in June 2004, after Dare was sentenced in April 2004.

We review de novo whether the district court applied the correct standard of proof. *See United States v. Banuelos*, 322 F.3d 700, 704 (9th Cir. 2003). Because Dare raised his objection under *Apprendi* in the district court, we review his *Apprendi* claim de novo. *See United States v. Smith*, 282 F.3d 758, 771 (9th Cir. 2002).

---

[1]Dare had no prior criminal convictions.

**ANALYSIS**

A. *Sixth Amendment Protections*

**[1]** Dare argues that he was sentenced in violation of the Sixth Amendment constitutional protections articulated in *Apprendi*, then in *Blakely*, and most recently in *United States v. Booker*, ___ U.S. ___, 125 S. Ct. 738 (2005). In *Apprendi*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. In *Blakely*, the Court stated, "Our precedents make clear, however, that the 'statutory maximum' for *Apprendi* purposes if the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*.". *Blakely*, 124 S. Ct. at 2537 (emphasis in original). In *Booker*, the Court stated:

> Accordingly, we reaffirm our holding in *Apprendi*: Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

*Booker*, 125 S. Ct. at 756.

The government maintains that Dare's sentence did not violate the Sixth Amendment and should be affirmed pursuant to the holding in *Harris v. United States*, 536 U.S. 545 (2002). The defendant in *Harris* sold a small quantity of marijuana in his pawnshop with an unconcealed pistol at his side. Harris was arrested for violating drug and firearms laws, including 18 U.S.C. § 924(c)(1)(A). The indictment, similar to the indictment in this case, said nothing of "brandishing" a firearm and made no reference to subsections of the statute. Har-

ris was found guilty at a bench trial of knowingly carrying a firearm during and in relation to a drug trafficking crime. At sentencing, Harris disputed that he brandished the gun, just as Dare disputed that he brandished or discharged the gun in the present case. The district court in *Harris* found, by a preponderance of the evidence, that Harris had brandished a gun and sentenced him to seven years. *Harris*, 536 U.S. at 551. Harris maintained that under *Jones v. United States*, 526 U.S. 227 (1999) (federal carjacking statute interpreted as setting out elements of separate offenses), brandishing is a separate offense for which he had not been indicted. Harris also maintained that even if brandishing is a sentencing factor, a jury must find this factor beyond a reasonable doubt. *Id.*

**[2]** The Court, in a plurality opinion, stated, "§ 924(c)(1)(A) defines a single offense" and "[the statute] regards brandishing and discharging as sentencing factors to be found by the judge, not offense elements to be found by the jury." *Harris*, 536 U.S. at 556. The Court distinguished *Apprendi* on the basis that the judge-found facts in *Apprendi* extended the sentence beyond the statutory maximum, while judge-found facts in *Harris* only increased the defendant's minimum sentence, and did not affect the maximum sentence. *Harris*, 536 U.S. at 562-65. The *Harris* plurality distinguished *Apprendi*, stating:

> [O]nce the jury finds all those facts, *Apprendi* says that the defendant has been convicted of the crime; the Fifth and Sixth Amendments have been observed; and the Government has been authorized to impose any sentence below the maximum. That is why, as *Apprendi* noted, "nothing in this history suggests that it is impermissible for judges to exercise discretion — taking into consideration various factors relating both to offense and offender — in imposing a judgment *within the range*." *Id.* at 481, 120 S. Ct. 2348. . . . [T]he judicial factfinding does not "expose a defendant to a punishment greater than

that otherwise legally prescribed." *Apprendi*, [530 U.S.] at 483, n.10, 120 S. Ct. 2348.

*Harris*, 536 U.S. at 565 (emphasis in original).

The *Harris* plurality reaffirmed the holding in *McMillan v. Pennsylvania*, 477 U.S. 79 (1986), that a state legislature may specify the condition for a mandatory minimum sentence for possession of a firearm without making the condition an element of the crime. *See Harris*, 536 U.S. at 566-67. The *Harris* plurality concluded:

> Reaffirming *McMillan* and employing the approach outlined in that case, we conclude that the federal provision at issue, 18 U.S.C. § 924(c)(1)(A)(ii), is constitutional. Basing a 2-year increase in the defendant's minimum sentence on a judicial finding of brandishing does not evade the requirements of the Fifth and Sixth Amendments. Congress "simply took one factor that has always been considered by sentencing courts to bear on punishment . . . and dictated the precise weight to be given that factor." *McMillan*, 477 U.S. at 89-90, 106 S.Ct. 2411. That factor need not be alleged in the indictment, submitted to the jury, or proved beyond a reasonable doubt.

*Harris*, 536 U.S. at 568.

Dare argues that *Harris* should be distinguished because Harris's minimum was increased by two years, from five to seven years, based upon the court's determination that Harris brandished the firearm, whereas his minimum *doubled* from five to ten years for discharge of the firearm, thereby raising constitutional concerns. We cannot limit *Harris* based upon the harshness of the sentence imposed under § 924(c). The *Harris* plurality stated:

> The Fifth and Sixth Amendments ensure that the defendant "will never get *more* punishment than he

bargained for when he did the crime," but they do not promise that he will receive "anything less" than that. *Apprendi*, [503 U.S.] at 498, 120 S.Ct. 2348 (Scalia, J., concurring). If the grand jury has alleged, and the trial jury has found, all the facts necessary to impose the maximum, the barriers between government and defendant fall. The judge may select any sentence within the range, based on facts not alleged in the indictment or proved to the jury — even if those facts are specified by the legislature, and even if they persuade the judge to choose a much higher sentence than he or she otherwise would have imposed. That a fact affects the defendant's sentence, even dramatically so, does not by itself make it an element.

*Harris*, 536 U.S. at 566.

**[3]** Thus, under *Harris*, the district court could have sentenced Dare to *any* sentence within the range of five years to life without further fact finding. According to *Harris*, judge-found facts that increase a sentence under § 924(c) are not in the jury's domain because the findings do not increase the possible sentence beyond the statutory maximum of life imprisonment. *See Harris*, 536 U.S. at 557; 536 U.S. 578-79 (Thomas, J., dissenting) ("[T]he constitutional analysis adopted by the plurality would hold equally true if the mandatory minimum for a violation of § 924(c)(1) without brandishing was five years, but the mandatory minimum with brandishing was life imprisonment.").

Justice Breyer observed in his concurring opinion in *Harris* that one cannot easily distinguish *Apprendi* from *Harris* "in terms of logic." *Harris*, 536 U.S. at 569. Justice Thomas observed in his dissenting opinion in *Harris* that the fact that a defendant brandished a firearm "indisputably alters the prescribed range of penalties to which he is exposed under 18 U.S.C. § 924(c)(1)(A)." *Harris*, 536 U.S. at 575 (Thomas, J.,

dissenting). Justice Thomas noted, "Whether one raises the floor or raises the ceiling it is impossible to dispute that the defendant is exposed to greater punishment than is otherwise prescribed." *Id.* at 579. He stated:

> Looking to the principles that animated the decision in *Apprendi* and the bases for the historical practice upon which *Apprendi* rested (rather than the historical pedigree of mandatory minimums), there are no logical grounds for treating facts triggering mandatory minimums any differently than facts that increase the statutory maximum. In either case the defendant cannot predict the judgment from the face of the felony, see [*Apprendi*], 530 U.S. at 478-79, 120 S.Ct. 2348, and the absolute statutory limits of his punishment change, constituting an increased penalty.

*Id.* at 579-80.

We agree that Dare could not predict his punishment from the face of his indictment or from the facts he admitted in his plea. For most sentences imposed under § 924(c)(1), the minimum sentence is the maximum sentence, even though the defendant is exposed to a possible sentence as severe as life imprisonment.[2] *Harris*, 536 U.S. at 578 (Thomas, J., dissent-

---

[2]*Cf. United States v. Harris*, 397 F.3d 404, 411-12 (6th Cir. 2005) ("If we look only at the theoretical possibility of a life sentence for any § 924(c) violation, the reasoning of *Booker* suggests that there is no Sixth Amendment violation. However, under the Guidelines regime, a life sentence was only possible — absent an upward departure — for a person who, having previously been convicted for a violation of § 924(c), is again convicted of violating the subsection, the second time with a very serious weapon. *See* 18 U.S.C. § 924(c)(1)(C)(ii) (mandating life sentence only in the case of a 'second or subsequent conviction under this subsection' where 'the firearm involved is a machinegun or destructive device, or is equipped with a firearm silencer or firearm muffler'). Given the severe constraints on imposition of a life sentence in the pre-*Booker* world, it would seem strikingly at odds with the principles set forth in *Booker* to hold that the sudden advisory nature of the Guidelines prevents the (still mandatory) provisions of § 924(c) from violating the Sixth Amendment.")

ing) (citing sentencing data); U.S.S.G. § 2K2.4(b). Nevertheless, we cannot distinguish the sentence imposed in *Harris* from the one imposed in this case.

**[4]** Dare argues that the constitutional analysis in *Harris* was effectively overruled by the plurality in *Booker*, ___ U.S. ___, 125 S. Ct. at 756. We agree that *Harris* is difficult to reconcile with the Supreme Court's recent Sixth Amendment jurisprudence, but *Harris* has not been overruled. *See United States v. Cardenas*, 405 F.3d 1046, 1048 (9th Cir. 2005) ("*Booker* does not bear on mandatory minimums."); *United States v. Jones*, 418 F.3d 726, 732 (7th Cir. 2005) ("Under *Harris*, which the Supreme Court did not disturb in *Booker*, imposition of the ten-year mandatory minimum sentence for violation of 924(c)(1)(A)(iii) did not violate the Sixth Amendment."); *United States v. Duncan*, 413 F.3d 680, 683 (7th Cir. 2005) ("[N]othing in *Booker* or *Blakely* suggests that the Court reconsidered, much less overruled, its holding in *Harris*."); *id.* at 683 n.3 (collecting cases from other circuits concluding that *Booker* does not apply to statutory mandatory minimum sentences).

**[5]** We cannot question *Harris'* authority as binding precedent. *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) ("A decision of the Supreme Court will control that corner of the law unless and until the Supreme Court itself overrules or modifies it. Judges of the inferior courts may voice their criticisms, but follow it they must."); *Duncan*, 413 F.3d at 683-84 ("[E]ven if the logic and spirit of those decisions [*Booker* and *Blakely*] could be interpreted to have eroded the Court's previous rationale for permitting mandatory minimum sentences based on judicial factfinding, it certainly is not our role as an intermediate appellate court to overrule a decision of the Supreme Court or even to anticipate such an overruling by the Court.").

B. *Standard of Proof*

In *Harris*, the Supreme Court affirmed a mandatory statutory minimum seven year sentence based upon the district court's finding by a preponderance of the evidence that Harris had brandished a gun. *Harris*, 536 U.S. at 551-52. Dare argues that because the sentencing factor of "discharging" had the "disproportionate impact" of doubling his sentence from five to ten years, the district court erred in utilizing a preponderance of the evidence standard at sentencing.[3]

[6] As a general rule, the preponderance of the evidence standard is the appropriate standard for factual findings used for sentencing. *See United States v. Howard*, 894 F.2d 1085, 1089 (9th Cir. 1990). However, " '[W]hen a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction,' the government may have to satisfy a 'clear and convincing' standard." *United States v. Hopper*, 177 F.3d 824, 833 (9th Cir. 1999) (quoting *United States v. Restrepo*, 946 F.2d 654, 659 (9th Cir. 1991) (en banc). In *United States v. Jordan*, 256 F.3d 922, 928 (9th Cir. 2001), we stated that to determine a disproportionate effect, we look at the "totality of the circumstances," including the several factors relating to disproportionate effect set forth in *United States v. Valensia*, 222 F.3d 1173, 1182 (9th Cir. 2000), *cert. granted, judgment vacated, and remanded by* 532 U.S. 901 (2001). These factors include: (1) whether the

---

[3]Dare additionally argues that the district court erroneously rejected his argument on the effect of his intoxication. Dare asserts that "brandishing" under the definition in 18 U.S.C. § 924(c)(4) requires a showing of specific intent that the display of the firearm was to "make the presence of the firearm known to another person in order to intimidate that person." The district court determined that Dare "discharged" the firearm in relation to the drug offense and sentenced accordingly. "Discharge" is not defined in § 924(c). We conclude that a "discharge" requires only a general intent. Voluntary intoxication is not a defense to a general intent offense. *See United States v. Jim*, 865 F.2d 211, 212-14 (9th Cir. 1989). The district court did not err in rejecting Dare's intoxication argument.

enhanced sentence falls within the maximum sentence for the crime alleged in the indictment; (2) whether the enhanced sentence negates the presumption of innocence or the prosecution's burden of proof for the crime alleged in the indictment; (3) whether the facts offered in support of the enhancement create new offenses requiring separate punishment; (4) whether the increase in sentence is based on the extent of a conspiracy; (5) whether an increase in the number of offense levels is less than or equal to four; and (6) whether the length of the enhanced sentence more than doubles the length of the sentence authorized by the initial sentencing guideline range in a case where the defendant would otherwise have received a relatively short sentence. *Jordan*, 256 F.3d at 928 (quoting *Valensia*, 222 F.3d at 1182).

Dare's argument for application of a "disproportionate impact" test would be cognizable under our case law if his sentence were imposed solely by reference to enhancements under the federal sentencing guidelines. His sentence, however, was imposed by virtue of the mandatory minimum requirements of 18 U.S.C. § 924(c). The sentencing guidelines refer to the mandatory minimum sentences under § 924(c). *See* U.S.S.G. § 2K2.4(b) ("[I]f the defendant, whether or not convicted of another crime, was convicted of violating section 924(c) . . . the guideline sentence is the minimum term of imprisonment required by statute."). Thus, the statutory minimum sentences in § 924(c) bind the district court, not the sentencing guidelines and enhancements.

**[7]** To date, we have applied the "disproportionate impact" test only in the case of federal guideline sentencing enhancements. *See United States v. Gonzalez*, 365 F.3d 796, 799 (9th Cir. 2004). The enhancements under the formerly mandatory federal guidelines increased the defendant's possible maximum sentence. *See Booker*, ___ U.S. ___, 125 S. Ct. at 756. This case, by contrast, involves only a statutory mandatory minimum sentence. The judge's findings did not expose Dare to a higher maximum statutory sentence, which, under *Harris*

and the now advisory guidelines, is life imprisonment based upon the allegations in the indictment. *See Harris*, 536 U.S. at 565 ("The judge may impose the minimum, the maximum, or any other sentence within the range . . . ."). Therefore, under *Harris*, due process concerns do not require that a higher standard of proof be satisfied.

**[8]** The question arises whether Dare should be resentenced following *Booker* because he was sentenced in 2004 under a then-mandatory guidelines sentencing system. We decline to vacate the sentence and remand for resentencing pursuant to *Booker* because the outcome of Dare's resentencing could not possibly be different. *See Jones*, 418 F.3d at 732; *Duncan*, 413 F.3d at 684 ("If Mr. Duncan were to be resentenced, the district court would still have no discretion to sentence him on the firearm offense to less than the statutory thirty-year minimum."). The district court found that the firearm was "discharged" during a drug trafficking crime. This "sentencing factor," under § 924(c) and *Harris,* requires the district court to sentence the defendant to a mandatory minimum sentence of ten years. 18 U.S.C. § 924(c)(1)(A)(iii). There was no other sentencing guidelines range binding the district court that resulted in statutory *Booker* error. We have no reason to question the district court's factfinding,[4] and it is not our role to question the mandatory minimum sentences under § 924(c) or the federal prosecution of this individual case.

AFFIRMED.

---

[4]*Cf. United States v. Groce*, 398 F.3d 679, 682 n.2 (4th Cir. 2005) ("The factual conclusion that the gun was brandished did result in the imposition of a sentence which is higher than the five-year maximum sentence which was available *under the guidelines* for the use, carry, or possession of a gun absent a brandish. However, to the extent this increase in Groce's sentence is problematic under *United States v. Booker*, ___ U.S. ___, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), any problem will be remedied when the district court resentences under the advisory guidelines.").

BEA, Circuit Judge, dissenting:

I respectfully dissent. *Harris v. United States*, 536 U.S. 545 (2002), is no longer good law in cases where a defendant receives a sentence, based on facts found by a judge other than a prior conviction, that is higher than the maximum sentence the judge could have imposed based solely on facts either admitted by the defendant or found by a jury beyond a reasonable doubt. *See United States v. Booker*, 125 S. Ct. 738 (2005); *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004). *Blakely* and *Booker* changed our analysis.

First, although we used to consider only the statutory maximum for a sentence, we must now also consider the maximum under the Sentencing Guidelines when a defendant has been sentenced under a mandatory sentencing scheme. Further, we focus only on whether that fact increased the defendant's sentence above the maximum guidelines sentence. In other words, we focus only on the effect of a fact found by a judge on the defendant's sentence. We no longer distinguish between facts which are elements of the crime and those that are traditionally considered sentencing factors.

Second, any facts that increase a defendant's sentence above the maximum guidelines sentence must be proven (1) to a jury and (2) beyond a reasonable doubt. Here, the fact that increased Dare's sentence was found by a judge and only by a preponderance of the evidence. Accordingly, I think this case should be remanded for a new sentencing hearing pursuant to *United States v. Ameline*, 409 F.3d 1073 (9th Cir. June 1, 2005) (en banc).

## I.   Facts

Dare pleaded guilty to possession of a firearm during the commission of a drug-trafficking crime. Based on this fact alone, under the formerly-mandatory Sentencing Guidelines, the judge was required to sentence Dare to a maximum term

of imprisonment of 5 years. 18 U.S.C. § 924(c)(1)(A)(i); U.S.S.G. § 2K2.4.

Once the judge found, by a preponderance of the evidence, that Dare discharged the firearm during the commission of a drug-trafficking crime, the judge was required to sentence Dare to a term of imprisonment of 10 years. 18 U.S.C. § 924(c)(1)(A)(iii); U.S.S.G. § 2K2.4(b).

Under the formerly-mandatory Sentencing Guidelines, Dare's sentence went from a mandatory sentence of 5 years, to a mandatory sentence of 10 years based on a fact not charged in the indictment, admitted by the defendant, nor found by a jury beyond a reasonable doubt.

Two aspects of the trial judge's ruling are important to note. First, this is one of those rare cases in which the trial judge made it clear that, but for the mandatory Sentencing Guidelines, he would have imposed a lesser sentence. Second, the judge did not find that Dare discharged the shotgun during the course of the offense beyond a reasonable doubt, only by a preponderance of the evidence.

Before imposing the 10-year sentence, the judge made the following statements:

> *I find it outrageous, just like his sons do, that this man, for 12 grams of marijuana, is going to spend ten years of his life in a federal prison of the United States*. And at the very most, I could say, well, seven years is the best deal, and that borders on outrageous. But that's what the law is.
>
> And as you know, there's an overreach, in my view, on prosecuting. It is not that the laws should not be enforced, but there has to be judgment and there has to be an issue of comity and consideration of what

is warranted in terms of the proportionality of the wrong that's done.

You have a man who's lived in a community for 25 years, who is recognized as hard working, honest, reliable, who would give the shirt off of his back to anybody, who has given two sons to this country to defend this country, and we're going to lock him up for ten years and that's not outrageous? I think it is. *So I will be a part of the outrage. Unwillingly.* But I'm going to do it.

I'm going to make a finding of fact here. I'm going to find that the gun was brandished, I'm going to find that the gun was discharged. *If the burden of proof is clear and convincing, then I think the government's proof has failed in this case because of these factors.*

I think, in listening to that tape, that Mr. Dare clearly was intoxicated. He has testified, and it is uncontroverted, he did not even know that the gun was used until he appeared in front of Judge Erickson and was advised of that.

I'm going to make a finding that it was his ordinary practice when people were visiting with him that he would discharge the weapon, the shotgun, and that he had no intent, in terms of the actual discharge of the weapon, of intimidating or threatening either of the young men that were at his house.

I'm going to make a specific fact finding that neither of the young men felt that they were threatened by the discharge of the gun. It is true both of them were intimidated by the brandishing and the presence of the gun when he brought it out.

If the burden of proof is clear and convincing, then I think the government has failed to demonstrate that he actually intended the discharge of the gun to be part of the drug transaction.

If the evidence is by a preponderance of the evidence, as Mr. Van de Wetering has pointed out, then I believe that those facts that I just stated would indicate they wouldn't be mitigated and, consequently, by a preponderance of the evidence, I am going to find that the gun was discharged as part of the transaction.

The thing that supports that is listening to that tape and the chronicity of the way the events transpired. I put on this stop watch when that tape started and it was a very short time from start to finish, it was less than five minutes that the whole thing came about. And if that's what—that was all a single transaction from that perspective, at least by a preponderance of the evidence.

Consequently, I'm going to find that there was a discharge in this case.

That doesn't mitigate any comment I've made about how unfair this is, or the proportionality of the law or what is going on here.

Emphasis added.

## II.　Application of *Harris* after *Blakely* and *Booker*

Although these factual findings would have been sufficient under *Harris v. United States*, 536 U.S. 545 (2002), they no longer suffice. In *Harris*, the defendant was convicted of possession of a firearm in connection with a drug-trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A)(i) following

a bench trial. At sentencing, the judge also found Harris guilty of brandishing the firearm, and sentenced him to 7 years under 18 U.S.C. § 924(c)(1)(A)(ii). On appeal, Harris argued his sentence was unconstitutional because the fact of brandishing a firearm, which increased the mandatory minimum sentence from 5 to 7 years, was not charged in the indictment, nor proven beyond a reasonable doubt. The Court focused on *Apprendi v. New Jersey,* 530 U.S. 466 (2000), and *McMillan v. Pennsylvania,* 477 U.S. 79 (1986), to find that brandishing a weapon in connection with a drug-trafficking offense was a fact that was traditionally considered a sentencing enhancement, not an element of a separate crime, and therefore was not required to be charged in the indictment, nor found by a jury beyond a reasonable doubt because the 7-year mandatory minimum sentence for brandishing the firearm was still within the maximum sentence of life for possession alone. *Id.* at 553-57, 568-69. The Court did not address the effect of the 5-year maximum sentence for possession of a firearm under the Sentencing Guidelines. Only the dissent acknowledged that the Sentencing Guidelines limited the maximum sentence for possession, but even the dissent did not focus on this factor. *Id.* at 578 n.4 (Thomas, J., dissenting).

*Harris* was decided after *Apprendi v. New Jersey,* 530 U.S. 466 (2000). In *Apprendi*, the Court focused only on whether a fact found by the judge, not the jury, increased the defendant's sentence above the maximum penalty the defendant could have received under the applicable statute. Neither *Apprendi* nor *Harris* considered the validity of a sentence enhancement under the Sentencing Guidelines. Although *Apprendi* and *Harris* may well be good law if the sentence is claimed to exceed the *statutory maximum*, the two cases are inapposite where the claim is solely that the sentence is improperly enhanced under the Sentencing Guidelines, as discussed below. The Court expressly declined to consider the effect its ruling would have on the federal Sentencing Guidelines. *See Apprendi,* 530 U.S. at 497 n. 21.

I agree that under *Harris*, Dare's sentence does not violate the Constitution because his sentence of 10 years is still within the *statutory* range of 5 years to life for possession alone. *See* 18 U.S.C. § 924(c)(1)(A)(i). But the reasoning of *Harris* was left to one side, and the focus to determine the constitutionality of the sentence changed, in *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004).

*Blakely* was a direct appeal from a 90-month sentence imposed for a conviction of second degree kidnaping. Blakely pleaded guilty to kidnaping his estranged wife. The facts admitted in his plea, standing alone, supported a maximum sentence of 53 months under Washington's sentencing guidelines. The judge imposed a 90-month sentence, upon a finding that Blakely had acted with deliberate cruelty, a sentencing enhancement.

On appeal, the state argued the defendant's 90-month sentence met the *Apprendi* standard because it was still within the statutory maximum of 10 years for kidnaping alone. The Supreme Court reversed, holding the relevant statutory maximum for *Apprendi* purposes is "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" 124 S. Ct. at 2537 (italics in original). The Court held that since the Washington sentencing guidelines were mandatory, the sentencing judge could not sentence Blakely to more than 53 months without holding a sentencing hearing and obtaining jury findings on the aggravating factors, even though the statutory maximum was 10 years. *Id.* (holding that to determine whether the judge-found fact increased the defendant's sentence above the statutory maximum, courts must look at "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*"). The Court did not apply the distinction in *Harris* between facts that are elements of the crime, and those that are traditionally considered sentencing enhancements.

Similarly, in *United States v. Booker*, 125 S. Ct. 738 (2005), the jury found that Booker possessed at least 50 grams of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). *Id.* at 746. That statute provided a minimum sentence of 10 years in prison and a maximum sentence of life. 21 U.S.C. § 841(b)(1)(A)(iii). The federal Sentencing Guidelines, however, prescribed a sentencing range of 210 to 262 months in prison. *Id.*

The judge found, by a preponderance of the evidence, that Booker possessed an additional 566 grams of crack cocaine. *Id.* Under the Sentencing Guidelines, this finding mandated a sentence of 360 months to life. The judge imposed a sentence of 360 months—still within the statutory maximum of a life sentence for possession with intent to distribute of just 50 grams or more as found by the jury, but well above the maximum of 262 months under the formerly-mandatory Sentencing Guidelines. *Id.* The Supreme Court held that this sentence violated Booker's Sixth Amendment rights, and remanded the case for re-sentencing under the now-advisory Sentencing Guidelines. *Id.* at 746-56 (Stevens, J.).

Courts around the country have been grappling with similar questions. In *United States v. Harris*, 397 F.3d 404 (6th Cir. 2005),[5] the defendants were convicted of aiding and abetting in an attempted possession, with intent to distribute, of a mixture containing cocaine, and aiding and abetting the possession of a firearm in connection with a drug-trafficking crime. The statute provided a sentence of 5 years to life for the possession of a firearm in connection with a drug-trafficking crime. 18 U.S.C. § 924(c)(1)(A)(i). Under the Sentencing Guidelines, however, the maximum sentence was 5 years. U.S.S.G. § 2K2.4(b). At sentencing, the judge found that one of the firearms used during the drug-trafficking crime qualified as a semiautomatic assault weapon, thus enhancing the

---

[5]Not to be confused with *Harris v. United States*, 536 U.S. 545, 565 (2002).

defendants' sentences from 5 years to 10 years. 18 U.S.C.
§ 924(c)(1)(B)(i); U.S.S.G. § 2K2.4(b). The court of appeals
affirmed the convictions in part, but vacated the sentences and
remanded, holding, *inter alia*, that the enhancement was not
constitutional under *Booker*.

Although the firearm-type enhancement under 18 U.S.C.
§ 924(c)(1)(B)(i) is different from the enhancement for dis-
charging a firearm under 18 U.S.C. § 924(c)(1)(A)(iii) at issue
here, the same principle applies. *See also United States v.
Groce*, 398 F.3d 679, 682 n.2 (4th Cir. 2005) (stating that sen-
tences pursuant to *Harris v. United States*, 536 U.S. 545
(2002) are "problematic" after *Booker*).

Just recently, a district court facing a similar problem, also
found that, to the extent the cases conflict, *Blakely* and *Booker*
have overruled *Harris*:

> [T]he breadth of the holdings in *Booker* and *Blakely*
> have in fact overruled *Harris*. The Court has gone
> from holding that the Sixth Amendment is impli-
> cated in the determination of facts that increase a
> statutory maximum (*Apprendi*) to applying the Sixth
> Amendment to all facts "essential to the punish-
> ment" (*Booker* and *Blakely*). It has extended the
> application of the Sixth Amendment from statutory
> maximum penalties (*Apprendi*) to the mandatory
> "Guidelines" (*Booker*). And even if one does not
> characterize this group of holdings as overruling
> *Harris*, plainly the reasoning underlying them does
> overrule *Harris*.

*United States v. Malouf*, 2005 WL 1398624 at *9 (D. Mass.
June 14, 2005) (Gertner, J.) (footnotes omitted).

Further, although a sentence of 10 years is the minimum
sentence upon a finding that the defendant discharged the
weapon during and in relation to a drug trafficking crime,

here the finding that Dare discharged the weapon was insufficient.

Although I appreciate my colleagues' unwillingness to depart from *Harris* until it is explicitly overruled by the Supreme Court, I read *Blakely* and *Booker* as limiting cases to the extent those cases directly conflict with *Blakely* and *Booker*. For instance, in *United States v. Dunnigan,* 507 U.S. 87 (1993), the Court held that the sections of the Sentencing Guidelines requiring a sentence enhancement where the judge finds that the defendant committed perjury do not violate the privilege of the accused to testify on her own behalf. This issue was not involved in *Booker*. Nevertheless, because the parties raised the issue, the Court in *Booker* discussed *Dunnigan* and concluded that:

> Applying *Blakely* to the Guidelines would invalidate a sentence that relied on such an enhancement if the resulting sentence was outside the range authorized by the jury verdict. Nevertheless, there are many situations in which the district judge might find that the enhancement is warranted, yet still sentence the defendant within the range authorized by the jury. See *post,* at 774-776. (STEVENS, J., dissenting in part). Thus, while the reach of *Dunnigan* may be limited, we need not overrule it.

*Booker*, 125 S. Ct. at 753. The same principle holds true here. While *Harris* may not be overruled in its entirety, it is limited by *Booker*, and Dare's sentence exceeds the *Booker* limit. *See also United States v. Gordon*, 844 F.2d 1397, 1400 (9th Cir. 1988); *Utah-Nevada Co. v. De Lamar*, 133 F. 113, 120 (9th Cir. 1904) ("[T]he Supreme Court of the United States has since, as well as before, laid down the rules by which we must be guided; and, if there is a conflict between them, the later decisions must govern and control our action.").

### III.   Findings by a Preponderance of the Evidence

The trial judge found that Dare discharged the weapon intentionally, and as part of a drug transaction, but only by a preponderance of the evidence. The trial judge specifically held that if the standard were clear and convincing (a lower standard than beyond a reasonable doubt) he would *not* find Dare so discharged the firearm. *Blakely* and *Booker* teach us not only that a defendant is entitled under the Sixth Amendment to have a jury find all facts which enhance his sentence above the statutory maximum, but also that the defendant is entitled to have those facts found *beyond a reasonable doubt*.

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.

*Blakely*, 542 U.S. ___, 124 S. Ct. at 2536 (quoting *Apprendi,* 530 U.S. at 490).

Because the judge found the prosecution did not prove Dare discharged the firearm by clear and convincing evidence, he necessarily found the prosecution did not prove Dare discharged the firearm beyond a reasonable doubt. "The intermediate standard of clear and convincing evidence lies between a preponderance of the evidence and proof beyond a reasonable doubt." *Kenyeres v. Ashcroft*, 538 U.S. 1301, 1305 (U.S. 2003) (citation and internal quotation marks omitted).

It is understandable that the judge found it more likely than not that Dare discharged the shotgun into the air in an attempt to intimidate his visitors into not reporting him to the authorities. But it is just as understandable that the judge did not find this fact by clear and convincing evidence, let alone beyond a reasonable doubt, given that Dare was highly intoxicated, and had the peculiar custom of showing off by firing his shotgun when visitors came calling. In fact, shooting his shotgun

was such a non-event to Dare that he didn't even remember it happened until the Magistrate told him.

Accordingly, we should remand this case to the trial judge with instructions to impose a new sentence under the now-discretionary Sentencing Guidelines based solely on his finding that Dare possessed the firearm, a crime that entails a statutory minimum sentence of five years, not ten. 18 U.S.C. § 924(c)(1)(A)(i).