**UNPUBLISHED ORDER**

Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 19, 2005
Decided June 7, 2006

**Before**

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

No. 04-1703

United States of America,
         *Plaintiff-Appellee,*

         *v.*

Antonio Chavez,
         *Defendant-Appellant.*

Appeal from the United States
   District Court for the
   Northern District of Illinois,
   Eastern Division.

No. 02 CR 1148-2

**Matthew F. Kennelly**, *Judge.*

**O R D E R**

In this appeal, Antonio Chavez takes issue with the district court's decision that his sentence for a drug offense should be enhanced under the federal Sentencing Guidelines because he was an organizer or leader of the activity. See USSG § 3B1.1(c). This decision made Chavez ineligible for the "safety valve" provision of 18 U.S.C. § 3553(f)(1)-(5) and USSG § 5C1.2, which would have permitted the district court to impose a sentence below the statutory minimum. The district court chose not to go above that minimum, and thus sentenced Chavez to 120 months' imprisonment. See 21 U.S.C. § 841(b)(1)(A). Finding no clear error in the court's finding that the enhancement applied to Chavez, we affirm.

# I

As part of a plea of guilty to the charge of possessing 10.5 kilograms of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), Chavez stipulated to the facts relating to his offense. It began when he was looking for help in transporting a load of cocaine from Los Angeles to Chicago. Chavez approached his landlord and co-defendant, Ramon DeAlba, and proposed that DeAlba purchase a car, drive it to California, and return with the drugs. In exchange, Chavez offered to make the down payment on the car and to pay DeAlba an additional $10,000. DeAlba agreed, bought the car, and drove it to Los Angeles, where at Chavez's direction he turned it over to a third party who outfitted the car with hidden panels in which to store the drugs. After this work was completed, Chavez went to Los Angeles to pick up the car. He loaded it with approximately 10.5 kilograms of cocaine and then returned it to DeAlba. He instructed DeAlba to drive the car back to Chicago, but at the same time he informed DeAlba that he was reducing the additional payment to only $5,000.

DeAlba set forth for Chicago, but in Oklahoma the police pulled him over for a routine traffic violation. They found the cocaine and detained DeAlba, who agreed to cooperate with the authorities. Working with the police now, DeAlba called Chavez to report that he was approaching Chicago. Chavez instructed DeAlba to meet him in Roselle, Illinois. When DeAlba arrived, Chavez took delivery of the car keys and sat down in the driver's seat; at that point, he was arrested.

In the plea agreement between Chavez and the government, the parties agreed to disagree on the question whether Chavez's conduct merited a two-level increase under § 3B1.1(c) of the Sentencing Guidelines, which covers those who act as a manager or supervisor. Chavez did agree, however, that if the court applied the enhancement, then he would not be eligible for safety valve relief and would face a mandatory minimum sentence of 120 months.

At the sentencing proceeding, Chavez argued that he was merely an intermediary who transmitted instructions and funds from other unindicted coconspirators to DeAlba. The government took the position that the behavior of others was not relevant, and that Chavez's own actions demonstrated the appropriateness of the upward adjustment. The district court agreed with the government, taking note of the fact that Chavez "supplied the money for the vehicle, directed the person who was to drive the vehicle, arranged for it to be outfitted, made decisions about payment, and directed when and where the drugs were to be delivered." The court thought that control was the most important factor, and that Chavez's behavior showed "as good a definition of control as you can find." This finding meant that Chavez's offense level went from 29 to 31; combined with his criminal history score of I, his guideline range was 108 to 135 months. The mandatory statutory minimum, however, for his offense was 120 months. See 21 U.S.C. § 841(b)(1)(A). The district court reluctantly imposed

that sentence, commenting that it felt that 120 months was "way longer than is appropriate and necessary."

## II

Chavez's only argument on appeal, as we noted earlier, is that the district court erred in applying § 3B1.1(c). Like many findings that support an eventual sentencing range, this is one that we review for clear error. See *United States v. Blaylock,* 413 F.3d 616, 618 (7th Cir. 2005). Although Chavez refers us to a number of cases that hold that a middleman with no actual control over another member of an enterprise should not receive this enhancement, he is assuming the answer to the key question: did he have sufficient control over DeAlba to be classified as a manager or supervisor? Control in this context is not limited to strict or absolute authority; it can include organizing another's role in the scheme. See *United States v. Skoczen,* 405 F.3d 537, 550 (7th Cir. 2005); *United States v. Mustread,* 42 F.3d 1097, 1104 (7th Cir. 1994). We have held that organizers who "do not necessarily control anyone but nonetheless influence the criminal activity by coordinating its members" warrant the increase. *United States v. Reneslacis,* 349 F.3d 412, 417 (7th Cir. 2003).

In *United States v. Garcia,* 272 F.3d 866, 877 (7th Cir. 2001), we found the enhancement appropriate for a person who drove subordinates to a bank, provided seed money, and instructed them to make fraudulent transactions. Chavez's actions were similar: he provided the down payment on the car, instructed DeAlba where to take it to be modified, unilaterally decided how much to pay him (even cutting the back-end payment in half), and dictated where the hand-off was to occur in the Chicago area. Just because Chavez may not have recruited DeAlba and the record does not show whether Chavez received (or was to receive) more money than DeAlba does not mean that the imposition of the § 3B1.1(c) enhancement was clearly erroneous. The list of considerations for applying the guideline set forth in Application Note 4, to which Chavez refers, is not cumulative. The guideline requires the district court to decide only whether the individual had a leadership role, and if so, how important a role. The evidence here supports the district court's conclusion that Chavez functioned as a manager or supervisor.

## III

We note finally that Chavez has argued in his reply brief that he is entitled to a limited remand under *United States v. Paladino,* 401 F.3d 471 (7th Cir. 2005), because the district court expressed its desire to give him a lower sentence. He overlooks the fact, however, that the district court did not impose a Guidelines sentence. Instead, the judge properly followed the statutory mandatory minimum sentence dictated by the admissions in Chavez's guilty plea. As long as the Supreme Court adheres to *Harris*

*v. United States,* 536 U.S. 545 (2002), which held that the rule of *Apprendi v. New Jersey*, 530 U.S. 466 (2000) (and, by logical extension, *United States v. Booker,* 543 U.S. 200 (2005)), does not apply to statutory minimum sentences, there is no discretion a court may permissibly exercise that could give him a lower sentence. See also *United States v. Jones,* 418 F.3d 726, 731-32 (7th Cir. 2005); *United States v. Duncan,* 413 F.3d 680, 683 (7th Cir. 2005).

The judgment of the district court is **AFFIRMED**.